313 F.3d 677
 Gregory GAYLE, Plaintiff-Appellant,
v.
P. GONYEA, T. Sheehan, Hearing Officer, F. Iby, Co, P. Duheme, Co, T. Rocque, Sgt., R.T. Dubray, D.S.S., P.J. Lacy, Supt., Glen S. Goord, Commissioner of NYS DOCS, D. Selsky, Director of Shu, New York State Department of Correctional Services, H. Fayette, Senior Counselor & T.J. Lucas, Defendants-Appellees.
 Docket No. 01-0218.
 United States Court of Appeals, Second Circuit.
 Argued: June 20, 2002.
 Decided: December 10, 2002.
 
 Gregory Gayle, pro se, New York, NY, for Plaintiff-Appellant.
 Martin A. Hotvet, Assistant Solicitor General (Elliot Spitzer, Attorney General of the State of New York, Nancy A. Spiegel, of counsel), Albany, NY, for Defendants-Appellees.
 Before CALABRESI, SACK, and B.D. PARKER, JR., Circuit Judges.
 SACK, Circuit Judge.
 
 
 1
 Plaintiff-appellant Gregory Gayle, pro se and in forma pauperis, appeals from the August 7, 2001 Decision and Order of the United States District Court for the Northern District of New York (Thomas J. McAvoy, Judge) granting defendants-appellees' motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on all of the plaintiff's claims. The plaintiff had filed a 42 U.S.C. § 1983 action seeking compensatory damages against Captain P. Gonyea, Hearing Officer T. Sheehan, Correctional Officers F. Iby and P. Duheme, Sergeant T. Rocque, Deputy Superintendent R.T. Dubray, Superintendent P.J. Lacy, Commissioner of New York State Department of Correctional Services Glen S. Goord, Director of Special Housing Units Donald Selsky, the New York State Department of Correctional Services, Senior Counselor H. Fayette, and T.J. Lucas. The plaintiff alleged, inter alia, that some of the defendants were responsible for issuing a false misbehavior report against the plaintiff and subjecting the plaintiff to solitary confinement in retaliation for his exercising his constitutional right to utilize the prisoner grievance system. On August 7, 2001, the district court adopted the May 18, 2001 order and report-recommendation of Magistrate Judge Gustave J. DiBianco recommending that the court grant the defendants' motion for summary judgment because there were no genuine issues as to any material fact and the defendants were entitled to judgment as a matter of law. The plaintiff now appeals the judgment as to all of his claims.
 
 
 2
 We conclude that the plaintiff provided sufficient evidence to withstand a motion for summary judgment with regard to his claim alleging that the defendants issued a false misbehavior report and subjected the plaintiff to solitary confinement in retaliation for his exercising his constitutional right to utilize the prisoner grievance system. We therefore vacate and remand with respect to that claim. We are filing a summary order today in which we affirm with respect to the district court's resolution of the plaintiff's other claims.[1]
 
 BACKGROUND
 
 3
 Gregory Gayle, an African-American male, was an inmate at various facilities of the New York State Department of Correctional Services ("DOCS") from July 15, 1986 until his release on March 2, 1998, after serving two months beyond his minimum sentence of twelve years and six months for robbery in the first degree. In March 1993, Gayle completed a seventy-eight hour course in Legal Research and Law Library Management at the Greenhaven Correctional Facility, which qualified him to work as a clerk in the facility's law library. Between May and July of 1997, Gayle was transferred from Tappan/Sing Sing Correctional Facility ("Sing Sing"), to which he had been assigned, to the Bare Hill Correctional Facility ("Bare Hill") and then to the Clinton Correctional Facility ("Clinton") where he served the duration of his sentence. While at Bare Hill, DOCS officials filed a misbehavior report against Gayle and punished him with solitary confinement. Gayle alleges that the misbehavior report and confinement were in retaliation for his exercising his constitutional right to file grievances.
 
 
 4
 
 The Grievance and the Misbehavior Report That Followed
 
 
 
 5
 On July 3, 1997, Gayle wrote a formal complaint addressed to defendant Peter J. Lacey, Superintendent of Bare Hill, complaining of an incident that allegedly occurred on July 2, 1997, in which a prison vehicle ran over another inmate. In his letter, Gayle stated that he had overheard prison staff praising the officer who had "used the van as a deadly weapon" and describing "the incident as a video game where Blacks and Hispanics are the targets." Letter of Gayle to Lacy dated July 3, 1997, at 2. In response, defendant Captain P. Gonyea interviewed Gayle in the early afternoon of July 9, 1997. In the misbehavior report he subsequently filed, Gonyea described the interview as follows:
 
 
 6
 Gayle ... told me he was an inmate advocate against staff racism and misconduct.... Inmate Gayle admitted to me that he had no personal knowledge of the incident but he was telling other inmates in population to write complaints to Albany and the Superintendent on the matter.... Gayle stated inmate action would be the only way to make people aware of the problems with staff at Bare Hill. Gayle threatened inmate unrest and people getting hurt. Gayle stated he advocated inmates and officers taking off their shirts and fighting to solve their disagreements. Gayle stated that he advises other inmates to file law suits and write complaints against staff at this facility. Gayle stated he would continue to be the facility [sic] biggest problem until he got transferred.
 
 
 7
 P. Gonyea, Inmate Misbehavior Report dated July 9, 1997. The misbehavior report charges Gayle with violating prison rule 104.12,[2] which prohibits inmates from leading, organizing, participating, or urging other inmates to participate in action which may be detrimental to the order of the facility, and prison rule 104.13, which prohibits inmates from engaging in conduct which disturbs the order of the facility. Id.
 
 
 8
 In the course of the disciplinary hearing that followed, conducted by defendant Hearing Officer T. Sheehan, Gonyea testified that Gayle told him he thought that "if you and I had a problem ... we go in that room take off our shirts and we'd fight and that would be the end of it." Tr. of July 17, 1997 Tier III Hearing, at 12. Gayle explained that while discussing the racist slurs he had been subjected to at the facility, he had made that statement hypothetically in order to support his theory that "racism is nothing but a coward afraid of himself." Id. at 20. Gayle denied having threatened to become the facility's "biggest problem" and explained that he was merely reporting what he had heard prison officials saying about him. Id. at 23. Gayle also denied that he had threatened to instigate inmate unrest, explaining that he had only warned that the van incident would, in all likelihood, lead to inmate unrest he did not want to be a part of. Id. at 9.
 
 
 9
 Gonyea asserted that he feared that Gayle was encouraging the inmates to file grievances and that this would cause inmate unrest. In response to Gayle's question at the hearing as to which inmates he was allegedly organizing, Gonyea said that:
 
 
 10
 [Gayle] would not identify the inmates that he was encouraging to write complaints. [He] stated to me that he had no personal knowledge of the incident. [He] said they saw the incident and he was drawing conclusion of what took place and talking this among population. That an officer intentionally ran into an inmate with a van. Recklessly, without any regard for human life. Making these statements without factual knowledge that type of stuff talking this up with other inmates in which he stated he has done. That is extremely dangerous. And I was extremely concerned about this. For the fact that this incident did not take place and he is advocating that it did take place. It could definitely cause inmate unrest and that is the reason for his confinement, removing him from general population.
 
 Id. at 17.[3]
 
 11
 Gayle testified that he had identified the inmates with whom he had discussed the van incident. While he was walking with four other inmates, one of them said he had witnessed the incident, and Gayle recommended that he file a grievance. Id. at 8, 17, 20-21. Gayle mentioned the incident to two other inmates, both prisoner representatives to whom prisoners are supposed to turn with their grievances. Id.
 
 
 12
 Sheehan found Gayle guilty of urging other inmates to participate in action detrimental to the order of the facility in violation of prison rule 104.12 but not guilty of creating a disturbance in violation of prison rule 104.13. Id. at 38. Sheehan then imposed a penalty of ninety days' keeplock. Id. Gayle was transferred from Bare Hill to Clinton on July 18, 1997.
 
 
 13
 On July 13, 1997, Gayle wrote to defendant Glen Goord, Commissioner of DOCS, complaining, among other things, of the misbehavior report of July 9, 1997, alleging that it was false and that it had been filed in retaliation for his exercising his constitutional right to file the July 3, 1997 grievance regarding the van incident. Gayle also wrote a letter to Goord appealing the decision of Sheehan after the July 17, 1997 disciplinary hearing and sent copies of the letter to defendant Lacy, defendant Donald Selsky, Director of Special Housing Units, and defendant R.T. DuBray, who was then Deputy Superintendent of Bare Hill. Selsky affirmed the decision on September 12, 1997. In a letter dated September 16, 1997, Gayle requested that Selsky again review the decision, a request that Selsky denied. Gayle then filed a proceeding against Goord in New York State court pursuant to Article 78 of the New York Civil Practice Law and Rules, challenging the affirmance of the decision. On April 2, 1998, one month after Gayle's release from prison, Selsky administratively reversed the July 17, 1997 hearing without explanation.
 
 
 Procedural History
 
 
 14
 Gayle's 42 U.S.C. § 1983 action, pro se and in forma pauperis, was filed on December 4, 1998 in the United States District Court for the Southern District of New York against Gonyea, Sheehan, Iby, Duheme, Rocque, Dubray, Lacy, Fayette, Goord, Selsky, and DOCS, alleging, inter alia, that some of them had been responsible for filing a false misbehavior report against him and subjecting him to keeplock in retaliation for his exercising his constitutional right to file grievances. The action was transferred to the Northern District of New York because most of the behavior alleged in the complaint was alleged to have occurred at Bare Hill, which is located in the Northern District. Judge McAvoy referred the matter to Magistrate Judge Gustave J. DiBianco for a report and recommendation pursuant to 28 U.S.C. § 636(b). The defendants moved for summary judgment, and on May 18, 2001, the magistrate judge issued a report recommending granting the motion, concluding that the plaintiff had not elicited sufficient evidence to create a triable issue of fact regarding any of the claims, and that the Eleventh Amendment protected defendant DOCS from suit. Gayle timely filed objections to the magistrate judge's report-recommendation. On August 7, 2001, the district court granted the defendants' motion for summary judgment, adopting in full the magistrate judge's report-recommendation. The plaintiff appeals.
 
 DISCUSSION
 I. Standard of Review
 
 15
 We review a district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party. Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir.1999), cert. denied, 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000). A district court must grant a motion for summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c), i.e., "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.
 
 II. The Legal Framework
 
 16
 An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983. Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir.1988). A plaintiff alleging retaliatory punishment "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996). The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. Id. at 80. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff "committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report." Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir.) (per curiam), cert. denied, 525 U.S. 907, 119 S.Ct. 246, 142 L.Ed.2d 202 (1998); see also Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir.1994) (holding that the defendants met their burden when "it was undisputed that [the plaintiff] had in fact committed the prohibited conduct").
 
 
 17
 III. Applying the Legal Framework to Gayle's Allegations
 
 
 A. The Plaintiff's Burden
 
 
 18
 Gayle alleged in his verified complaint that several DOCS officials were involved in charging him with a false misbehavior report and punishing him with keeplock confinement in retaliation for his exercise of his constitutional right to file a grievance regarding the alleged van incident. "A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995). Gayle's complaint meets the requirements of Rule 56(e) that affidavits be made on the basis of personal knowledge, set forth facts that would be admissible in evidence, and demonstrate the affiant's competency to testify to the matters in the affidavit. Fed.R.Civ.P. 56(e). Gayle has also submitted a copy of his July 3, 1997 grievance, and the July 9, 1997 misbehavior report that followed. He has therefore submitted evidence to support a claim under 42 U.S.C. § 1983, Franco, 854 F.2d at 590, and met the first prong of his Graham burden, 89 F.3d at 80.
 
 
 19
 With respect to the second prong of the Graham burden, we conclude that Gayle has elicited circumstantial, but sufficient, evidence to create a genuine issue of material fact as to whether retaliation was a substantial factor in the DOCS officials' decision to charge and punish Gayle.
 
 
 20
 We have held that the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation. Colon, 58 F.3d at 872. Not only was the July 9th misbehavior report written shortly after the July 3rd grievance, it arose from statements that Gonyea says Gayle made to him during their discussion of Gayle's July 3rd grievance.
 
 
 21
 Gayle's assertions gain additional support from the fact that the July 17th hearing at which he was found guilty of violating rule 104.12 was eventually administratively reversed. Donald Selsky, April 2, 1998 Review of Superintendent's Hearing.
 
 
 22
 At the disciplinary hearing regarding the July 9th misbehavior report, Gayle and Gonyea offered conflicting testimony as to what prompted the report. Gonyea insisted that he had issued the misbehavior report in response to Gayle's statements during their July 9th interview, not in response to Gayle's July 3rd grievance, Tr. of July 17, 1997 Tier III Hearing, at 13, while Gayle denied making the statements, id. at 16, 20, 23. If a trier of fact were to conclude that Gayle is telling the truth, then Gonyea is lying about the reasons for issuing the report. A false reason for the report's issuance would support the inference that the real reason was the improper one: retaliation. The conflicting testimony of Gayle and Gonyea thereby raises a question of material fact that is a genuine issue for trial.
 
 
 23
 An analysis of Gonyea's testimony at the disciplinary hearing also sheds doubt on the accuracy of the accusations stated in the misbehavior report. For example, Gonyea charged Gayle with organizing other inmates, yet Gonyea could point to no inmate action, let alone inmate action connected to Gayle, that had occurred that day. Id. at 16-17.
 
 
 24
 Furthermore, Gonyea asserted, in both his misbehavior report and at the disciplinary hearing, that Gayle had made statements that indicated that he had advocated inmate violence, statements Gayle denied making. But Gonyea testified that Gayle told him he thought that "if you and I had a problem ... we go in that room take off our shirts and we'd fight and that would be the end of it.... And my understanding of it was that he had advocated this not only to me in the room at the time, but this is what he was advocating in the Facility." Id. at 12. Thus, according to Gonyea's testimony, Gayle did not actually tell Gonyea that he advocated violence to other inmates; that was only an inference from a statement Gayle made about settling a score between the two of them. Again, the failure of Gonyea's testimony to support the charges in the report could support the assertion of its being filed for an ulterior motive.
 
 
 25
 Finally, Gonyea testified that Gayle stated that "he would continue to be the Facility's biggest problem until he gets a transfer." Id. at 22. Even construing Gayle's statement that way, it does not describe conduct prohibited by the rule Gayle was charged with violating, but merely that in some vague sense, Gayle was planning to be a pain in the neck. In context, a trier of fact may well conclude that he intended to accomplish that end by further and more frequent protected activity rather than any violation of prison rules and that Gonyea's real motive was to prevent such additional protected activity.
 
 
 26
 The defendants argue that Gayle has failed to meet his evidentiary burden because he has failed to submit direct evidence that the report was filed as a retaliatory measure. But circumstantial evidence may be, and we think that in this case it is, sufficient to raise a genuine issue of material fact precluding the grant of summary judgment. Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983) (reversing decision granting motion for summary judgment where plaintiff's "allegations of retaliatory motive on the part of DOCS were supported by some circumstantial evidence").
 
 
 B. Defendant's Burden
 
 
 27
 Gayle has thus met his burden of showing that a genuine issue of material fact exists as to whether the DOCS officials used the July 9th misbehavior report to retaliate against his filing the July 3rd grievance. The burden therefore shifts to the defendants to show that, as a matter of law, Gayle would have been punished to the same extent regardless of the alleged retaliation. Graham, 89 F.3d at 80. The defendants argue that Gonyea would have filed a misbehavior report regarding Gayle based on the statements Gayle allegedly made to Gonyea threatening inmate unrest and admitting to encouraging other inmates to file grievances. Yet Gayle denied making the purportedly inflammatory statements attributed to him by Gonyea. Further, Gayle explained that two of his three discussions of the van incident with other inmates were fully within the prison's grievance policy, leaving only one occasion where he responded to an inmate's firsthand account of the incident by suggesting that he file a grievance. It is therefore disputed whether Gayle committed all of the prohibited conduct, and, more important, whether he committed the most serious of the conduct — threatening to instigate inmate unrest. Cf. Hynes, 143 F.3d at 657 (concluding that the defendants had met their burden where the evidence demonstrated that the plaintiff had committed "the most serious, if not all, of the prohibited conduct"). The defendants therefore at this stage of the proceeding have not met their burden of establishing as a matter of law that Gayle would have been punished to the same extent he was punished in the absence of a retaliatory motive.
 
 IV. Appointment of Counsel
 
 28
 The plaintiff has pursued his claims pro se and in forma pauperis. On remand, it may be advisable for him to have the assistance of counsel. We therefore direct the district court on remand to consider appointing counsel to represent Gayle in the proceedings if Gayle requests such representation. See 28 U.S.C. § 1915(e)(1).
 
 CONCLUSION
 
 29
 The plaintiff has elicited sufficient evidence to create a genuine issue of material fact as to whether the defendants retaliated against him by filing a false misbehavior report and thereafter, as a result, subjecting him to keeplock incarceration. Accordingly, we vacate and remand for trial that part of the judgment of the district court that dismissed the plaintiff's complaint of retaliation with respect to the July 9th misbehavior report. On remand, the district court shall consider appointing counsel for the plaintiff if he so requests. We affirm the remainder of the judgment by summary order filed today.
 
 
 
 Notes:
 
 
 [1]
 This opinion concerns only the misbehavior report issued by Gonyea at 12:20 p.m. on July 9, 1997. The plaintiff's complaint involved other misbehavior reports, none of which are addressed herein
 
 
 [2]
 The text of rule 104.12, in Rule Series 104 Riot, Disturbances and Demonstrations, states: "Inmates shall not lead, organize, participate, or urge other inmates to participate, in work-stoppages, sit-ins, lock-ins, or other actions which may be detrimental to the order of the facility." N.Y. Comp.Codes R. & Regs. tit. 7, § 270.2(B)(5)(iii)(emphasis added). Gayle wasnot charged with violating rule 104.11, which provides that "[i]nmates shall not engage in any violent conduct or conduct involving the threat of violence either individually or in a group." Id. at (ii).
 
 
 [3]
 While we have not yet addressed the question whether barring inmates from encouraging other inmates to file grievances implicates speech and free association rights under the First Amendment, we have held that a ban against circulating petitions amongst the inmate population, an arguably comparable type of organizing, is permissibleDuamutef v. O'Keefe, 98 F.3d 22, 24-25 (2d Cir.1996). Gayle, however, does not raise a First Amendment challenge, and we therefore do not address it here.
 It is also open to question whether the language of prison rule 104.12, "Inmates shall not lead, organize, participate, or urge other inmates to participate, in work-stoppages, sit-ins, lock-ins, or other actions which may be detrimental to the order of the facility," N.Y. Comp.Codes R. & Regs. tit. 7, § 270.2(B)(5)(iii), puts prisoners on notice that circulating petitions or encouraging other inmates to file grievances is barred. Gayle also does not raise this question, and we therefore do not address it here either.