Michael D. DAVIS, Plaintiff,

v.

**COMMERCIAL BANK OF NEW YORK, Defendant.**

No. 02 Civ.1913(SAS).

United States District Court, S.D. New York.

June 18, 2003.

---

W. Dan Boone, Boline & Boone, New York City, for Plaintiff.

Eric J. Bressler, Wickham, Wickham & Bressler, P.C., Melville, NY, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Michael D. Davis is suing his former employer, the Commercial Bank of New York ("CBNY" or the "Bank"), for failure to pay severance benefits under the Employee Retirement Income Security Act of 1974 ("ERISA")[1] and related claims. The Bank now seeks to dismiss the complaint for lack of subject matter jurisdiction, claiming that there was no severance "plan" within the meaning of ERISA. The parties also cross-move under Federal Rule of Civil Procedure 56, both claiming that the plain language of the severance plan resolves the question of Davis' eligibility for severance pay in their favor. For the reasons that follow, all of these motions are denied.

## I. FACTS

The following facts are undisputed, except where otherwise noted.

From August 1998 to September 2001, Davis was the manager of CBNY's branch office at 69th Street and Broadway in Manhattan.[2] On September 20, 2001, he was fired; the only stated explanation at the time came from Gerald F. Grez, then-First Vice President in charge of human resources at CBNY, who explained that the Bank was "exercising [its] rights to terminate [Davis] without cause."[3] At the time that he was fired, Davis received an annual salary of $76,000 in addition to any yearly bonuses.[4] (In the two years prior to his termination Davis had received year-end bonuses of $6,000).[5]

As a full-time employee with more than one year of service, Davis was potentially eligible for benefits under the Bank's severance plan (the "Plan").[6] That Plan provides, in relevant part:

> The purpose of the Severance Pay Plan is to provide temporary and short-term unemployment type benefits to eligible

---

1. 29 U.S.C. § 1001, et seq.

2. *See* Plaintiff's Local Civil Rule 56.1(a) Statement ("Pl. 56.1 Stmt.") ¶ 1.

3. *See id.* ¶¶ 6–7.

4. *See id.* ¶¶ 2–3

5. *See id.* ¶ 3.

6. *See id.* ¶ 11. *See also* CBNY Employee Handbook ("Employee Handbook") at 11 (explaining that employees eligible under the severance policy include those "who are classified as full-time employees and who have

employees whose employment with the Bank is terminated under the conditions described below. This plan replaces all prior plans, programs, and arrangements providing severance-type benefits to eligible employees.

\*　　\*　　\*　　\*　　\*　　\*

An employee shall not be eligible to receive severance benefits under this plan unless the Bank determines that the employee has satisfied each of the following conditions:

1. Involuntary Termination

The Bank in its sole discretion, determines that such employee's employment is being terminated involuntarily by the Bank in connection with a job elimination, office closing, reduction in force, business restructuring, or such other circumstances as the Bank deems appropriate for the payment of severance benefits.

An employee will not be eligible for severance benefits if the Bank, in its sole discretion, determines that the employee's employment is terminated for any of the following reasons:

(a) resignation or other voluntary termination of employment.

(b) death or disability

(c) Discharge by the Bank for cause, as determined by the Bank in its sole discretion.

(d) The employee has been offered, but has refused to accept, another suitable position with the Bank or any of its affiliates; or

(e) The employee's employment has been terminated in connection with a sale or transfer, merger, establishment of a joint venture, or other similar corporate transaction, and such employee has been offered employment by the successor employer.[7]

The Plan then goes on to set forth some additional requirements for eligibility, not relevant here, and guidelines for calculating the proper amount of severance pay (although "the Bank, in its sole discretion, may increase or decrease the amount of severance benefits payable to an eligible employee").[8]

Where the parties disagree is whether Davis actually qualifies for severance pay under the Plan. At the time Davis was terminated, CBNY was in the process of merging with and being acquired by North Fork Bank. "One of the stated reasons offered by the merger partners to justify their combination was the promise of anticipated efficiencies to be achieved by the consolidation of facilities and the elimination of duplicate capabilities and other institutional redundancies."[9] Thus, many CBNY employees were apprehensive about their future employment.[10] And, indeed, the merger was announced in February 2001, Davis was fired in September 2001, and the merger was consummated on November 8, 2001.[11] Davis therefore argues that he was "terminated involuntarily by the Bank in connection with a ... business restructuring,"[12] entitling him to severance pay.

completed at least one year of service."), Ex. A to Pl. 56.1 Stmt.

7. Employee Handbook at 17–18.

8. *Id.* at 19.

9. Complaint ¶ 20.

10. *See id.* ¶ 21.

11. *See id.* ¶¶ 18–19. *See also* Press Release, "North Fork Bancorporation, Inc. to Acquire Commercial Bank of New York for Approximately $175 Million," Ex. 9 to 10/7/02 Affirmation of Eric J. Bressler, counsel to CBNY, in Opposition to Motion for Summary Judgment ("Bressler Aff.").

12. Employee Handbook at 18.

The Bank, on the other hand, not only denies that Davis' termination was related to the North Fork merger, but also argues that Davis was actually fired for cause. In particular, the Bank now cites evidence of Davis' poor job performance, notwithstanding the fact that no mention of cause was made to Davis at the time he was fired.[13]

## II. LEGAL STANDARD

### A. Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."[14] "It is well ingrained in the law that subject-matter jurisdiction can be called into question either by challenging the sufficiency of the allegation or by challenging the accuracy of the jurisdictional facts alleged."[15] Where a defendant objects to a plaintiff's jurisdictional *pleading,* the standard of review is the same as the familiar Rule 12(b)(6) requirement: "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."[16]

"But where evidence relevant to the jurisdictional question is before the court, 'the district court ... may refer to [that] evidence.' "[17] Thus, "[i]n resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."[18]

### B. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[19] "An issue of fact is genuine 'if the evidence is such that a jury could return a verdict for the nonmoving party,' "[20] and a fact is material when "it 'might affect the outcome of the suit under the governing law.' "[21]

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists.[22] In

---

13. *See* Defendant's Rule 56.1(b) Statement ("Def. 56.1 Stmt.") ¶¶ 3, 5–6.

14. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).

15. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 68, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (Scalia, J., concurring in part and concurring in the judgment) (citations omitted). *See also Robinson v. Government of Malaysia,* 269 F.3d 133, 140 (2d Cir.2001) ("the defendant may challenge either the legal or the factual sufficiency of the plaintiff's assertion of jurisdiction, or both.").

16. *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000).

17. *Robinson,* 269 F.3d at 140 (alterations in original) (quoting *Makarova,* 201 F.3d at 113).

18. *Luckett v. Bure,* 290 F.3d 493, 496–97 (2d Cir.2002).

19. Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002).

20. *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

21. *Gayle,* 313 F.3d at 682 (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

22. *See Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir.2002) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, she " 'must do more than simply show that there is some metaphysical doubt as to the material facts,' " [23] and she " 'may not rely on conclusory allegations or unsubstantiated speculation.' " [24] Rather, the non-moving party must produce admissible evidence that supports her pleadings.[25] In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." [26]

In determining whether a genuine issue of material facts exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor.[27] Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." [28] Summary judgment is therefore inappropriate "if there is *any* evidence in the record that could reasonably support a jury's verdict for the non-moving party." [29]

## III. DISCUSSION

### A. Subject Matter Jurisdiction

■ Federal question subject matter jurisdiction [30] in this case is predicated on ERISA, which provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his [employee welfare benefits] plan." [31] "[A] program to pay severance benefits may constitute an 'employee welfare plan' " within the meaning of ERISA.[32] But not every severance plan is an *ERISA* severance plan.[33]

■ The touchstone of an ERISA plan is the presence of an "ongoing administrative program." [34] In this circuit, in analyzing whether an employee benefits package constitutes an ERISA plan, courts look to such factors as "(1) whether the employer's undertaking or obligation requires managerial discretion in its adminis-

23. *Caldarola,* 298 F.3d at 160 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

24. *Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d 423, 428 (2d Cir.2001) (quoting *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998)). *See also Gayle,* 313 F.3d at 682.

25. *See First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

26. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.,* 315 F.3d 171, 175 (2d Cir.2003) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505).

27. *See Niagara Mohawk,* 315 F.3d at 175.

28. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

29. *Marvel,* 310 F.3d at 286 (emphasis added) (citing *Pinto v. Allstate Ins. Co.,* 221 F.3d 394, 398 (2d Cir.2000)).

30. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

31. 29 U.S.C. § 1132(a)(1)(B).

32. *James v. Fleet/Norstar Fin. Group, Inc.,* 992 F.2d 463, 468 (2d Cir.1993). *See also Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 7 n. 5, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) ("severance benefits are included in ERISA.").

33. *See Fort Halifax,* 482 U.S. at 12, 107 S.Ct. 2211 ("Congress pre-empted state laws relating to *plans,* rather than simply to *benefits.* Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation.") (emphasis in original).

34. *Schonholz v. Long Island Jewish Medical Center,* 87 F.3d 72, 75 (2d Cir.1996).

tration; (2) whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits; and (3) whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria." [35]

■ CBNY's Plan is an ERISA plan under every one of these factors. *First,* administration of the Plan plainly requires the Bank's discretion: the text of the Plan refers to the Bank's "sole discretion" no less than five times, and in several other places refers to that which the Bank "determines," "deems appropriate," and "deem[s] necessary." [36] *Second,* a reasonable employee would have perceived a commitment by the Bank to provide employee benefits. The severance Plan was published exclusively in the Employee Handbook, and is applicable in a wide array of circumstances that are likely to repeatedly recur. In other words, the Plan does not contemplate severance only in the case of a one-time occurrence.[37] Moreover, the severance Plan itself was only alterable or terminable "by written action of the Bank's Board of Directors," rather than by the simple exercise of the Bank's discretion, suggesting an "ongoing commitment" [38] to provide employee benefits. *Third,* and finally, the Bank is required to make an individualized finding of eligibility with respect to each terminated employee. The Plan explicitly provides that severance benefits are contingent upon the "Bank['s] determin[ation] that the employee has satisfied [certain] conditions," principally that, in the Bank's "sole

discretion," the employee was terminated involuntarily and "in connection with a job elimination, office closing, reduction in force, business restructuring, or such other circumstances as the Bank deems appropriate for the payment of severance benefits." [39] This sort of case-by-case determination of eligibility is precisely the "ongoing administrative program" that is the hallmark of an ERISA plan.[40]

Having established that the Bank's Plan is governed by ERISA, subject matter jurisdiction in this Court is proper. The Bank's motion to dismiss is therefore denied.

### B. Summary Judgment

The parties next cross-move for summary judgment on Davis' claim for failure to pay severance benefits. Davis also seeks summary judgment on his claim for failure to produce plan documents as required by ERISA.

### 1. Denial of Benefits

■ The Bank argues that, because the Plan puts the payment of severance benefits in the "sole discretion" of the Bank, it was not obligated to pay anything if it chose not to. However, this reading of the plan misapprehends the meaning of "discretion" under ERISA and would render the Plan meaningless; even unfettered discretion is not unreviewable.

■ In *Firestone Tire & Rubber Co. v. Bruch,* the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a

**35.** *Tischmann v. ITT/Sheraton Corp.,* 145 F.3d 561, 566 (2d Cir.1998) (quotation marks omitted) (citing *Schonholz,* 87 F.3d at 76).

**36.** *See* Employee Handbook at 17–19.

**37.** *See Fort Halifax,* 482 U.S. at 12, 107 S.Ct. 2211 ("The theoretical possibility of a one-time obligation in the future simply creates no

need for an ongoing administrative program for processing claims and paying benefits.").

**38.** *Tischmann,* 145 F.3d at 566.

**39.** Employee Handbook at 17–18.

**40.** *Schonholz,* 87 F.3d at 75.

*de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[41] "[W]here the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, [courts] will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'"[42]

■ Under the arbitrary and capricious standard, "we may overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law."[43] Thus, while I am required to consider whether the Bank's "decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," I may not "upset a reasonable interpretation by the administrator"[44] or "substitute [my] own judgment for that of the [Bank] as if [I were] considering the issue of eligibility anew."[45]

On a summary judgment motion, "the arbitrary and capricious standard requires that we 'ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits.'"[46] Put differently, the Bank's "decision will be upheld unless it is not grounded on *any* reasonable basis. The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end."[47]

Because this Plan confers upon CBNY "the discretionary authority to determine eligibility," the arbitrary and capricious standard applies.[48] However, because CBNY was apparently unaware that its Plan was governed by ERISA, there was no formal plan administration nor was there a written denial of benefits. Rather, the only contemporaneous evidence of the reason for Davis' termination is Mr. Grez's statement that the Bank was "exercising [its] rights to terminate [Davis] without cause."[49]

On this limited record, it is unclear why Davis was actually terminated and thus unclear whether the Bank's denial of bene-

---

**41.** 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

**42.** *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995) (citing *Firestone Tire*, 489 U.S. at 115, 109 S.Ct. 948).

**43.** *Id.* at 442.

**44.** *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir.1996) (citations and quotation marks omitted).

**45.** *Pagan*, 52 F.3d at 442. *See also Peterson v. Continental Casualty Co.*, 282 F.3d 112, 117 (2d Cir.2002) ("It is well established that federal courts have a narrow role in reviewing the discretionary acts of ERISA plan administrators.").

**46.** *Twomey v. Delta Airlines Pilots Pension Plan*, 328 F.3d 27, 31 (1st Cir.2003) (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 17 (1st Cir.2002)).

**47.** *Cirulis v. UNUM Corp.*, 321 F.3d 1010, 1013 (10th Cir.2003) (quotation marks, citations and alterations omitted, emphasis in original) (citing *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir.1999)). *See also Jiras v. Pension Plan of Make–Up Artist & Hairstylists Local 798 of the Alliance of Theatrical Stage Employees*, 170 F.3d 162, 165 (2d Cir.1999) (affirming district court where, "[a]pplying th[e arbitrary and capricious] standard, the court found that Jiras's minimal evidence supporting his claims about the 1964 and 1965 films failed to create a genuine question of material fact whether the Fund's denial of certain benefits was arbitrary and capricious.").

**48.** *Firestone Tire*, 489 U.S. at 115, 109 S.Ct. 948.

**49.** Pl. 56.1 Stmt. ¶ 7.

fits was supported by "any reasonable basis."[50] If Davis was indeed terminated "in connection with ... a business restructuring,"[51] then the Bank's denial of benefits may have been arbitrary and capricious. On the one hand, Davis has produced some evidence that his termination may have been in connection with a restructuring— namely, that he was fired "without cause" in the midst of a merger—precluding summary judgment against him. On the other hand, Davis has not produced enough evidence to establish as a matter of law that the Bank's determination to the contrary[52] was arbitrary and capricious, precluding summary judgment for him. There are, in other words, triable issues of fact on the question of whether Davis was fired in connection with the North Fork merger; summary judgment is therefore inappropriate.

The Bank also proffers an alternative reason for Davis' termination: he was fired for cause. According to Grez, "Plaintiff's employment termination arose directly from a complaint concerning a customer's account and Plaintiff's relationship with the complainant, and therefore, regarding the performance of his duties."[53] And although the Bank did not articulate Davis' job performance as an explicit reason for his termination at the time he was fired, it has produced a customer complaint dated September 18, 2001, two days prior to his termination.[54] The customer complaint was resolved when the Bank refunded $5,000 that Davis allegedly misappropriated.[55] If Davis actually was fired for cause (regardless of what was said at the time), then he would have been ineligible under the Plan in any event—even if his termination *was* in connection with the CBNY–North Fork merger.[56]

Thus, there are triable questions of fact as to Davis' eligibility under the Plan that render summary judgment inappropriate. In particular, trial of the ERISA claim must be addressed to the following two questions:

1. Whether the Bank's determination that Davis' termination was not "in connection with" the CBNY–North Fork merger was arbitrary and capricious; and

2. If it was, whether Davis was actually fired for cause (and whether the termination for cause was arbitrary and capricious).

### 2. Production of Plan Documents

 In addition to his claim for severance pay, Davis also alleges that the Bank violated ERISA by refusing to produce certain requested Plan documents, particularly the severance Plan itself. ERISA

---

**50.** *Cirulis,* 321 F.3d at 1013 (emphasis omitted).

**51.** Employee Handbook at 18.

**52.** 10/4/02 Affidavit of Gerald E. Grez ¶ 4 ("Plaintiff's employment was terminated involuntarily not in connection with job elimination, office closing, reduction in force, business restructuring, or *other circumstances* which CBNY deemed in its sole discretion appropriate for severance."), attached to the Bressler Aff.

**53.** *See also* 10/4/02 Affidavit of Kenneth Hubany, CBNY regional manager ("Hubany Aff."), ¶¶ 3–5 (detailing complaint against Davis), attached to the Bressler Aff.; 10/5/02 Affidavit of Richard Herr, CBNY assistant branch manager, ¶¶ 2–3 (same), attached to the Bressler Aff.

**54.** *See* Affidavit of Velva Daly, Ex. A to the Hubany Aff.

**55.** *See* Account statement for Malvina Hecht, Ex. B to the Hubany Aff.

**56.** *See* Transcript of 5/30/03 oral argument ("5/30/03 Tr."), at 14 (Plaintiff's counsel W. Dan Boone stating, in response to the Grez Affidavit, "So I see that. Then there would be a triable issue.").

provides that a plan administrator who fails to respond to a written request for pertinent information—such as the employee benefit plan itself—within 30 days may, in the court's discretion, be fined up to $100 per day.[57]

In this case, Davis—believing the Employee Handbook to contain only a summary of a longer and more detailed severance plan—requested plan documents from CBNY on January 11, 2002. Plaintiff did not believe he got a satisfactory answer until oral argument was held on these motions on May 30, 2003. At that argument, the Bank's counsel represented that there were no ERISA plan documents other than the Employee Handbook, largely because the Bank did not believe its plan was governed by ERISA,[58] a representation first made on September 30, 2002.[59]

Davis is not entitled to recover for the Bank's failure to produce any plan documents. Davis was plainly in possession of the only plan document, the Employee Handbook, all along—a copy of the relevant pages is attached to his complaint.[60] He therefore was never actually denied any plan documents. And while it is true that CBNY may not have made a written response denying the existence of further plan documents, this is only a minor offense and one attributable to a company that no longer exists. Once North Fork (as opposed to CBNY) and its counsel became involved, it clearly stated, in writing, that no such documents exist.[61] Punishing North Fork for CBNY's technical violation—which, in any case, did not prejudice Davis—makes little sense.[62]

## IV. CONCLUSION

For the reasons stated above, the Bank's motion to dismiss is denied. The parties' cross-motions for summary judgment are also denied, but Davis' claim for failure to produce ERISA plan documents (Claim VI) is dismissed. The Clerk of the Court is directed to close these motions [docket numbers 9 and 11]. A trial has been scheduled in Courtroom 12C for 10:00 a.m. on July 14, 2003.

---

**57.** *See* 29 U.S.C. § 1132(c).

**58.** *See* 5/30/03 Tr. at 9 ("There were no 5500s. There is no plan summary. What you see is what you get. It is in the handbook. That's what CBNY did.") (Statement of Eric J. Bressler, counsel to CBNY). *See also id.* ("I believe it, but it took me 231 days to get the answer.") (Statement of W. Dan Boone).

**59.** *See* Defendant's Response to Plaintiff's First Request for Documents, Ex. D to Plaintiff's 10/12/02 Reply Affidavit in Further Support of Cross–Motion ("No documents other than those contained in the handbook reflecting the severance plan are available. No documents reflecting a modification or amendment by written action of the board of directors are available.").

**60.** *See* Ex. A to the Complaint.

**61.** *See supra* note 59.

**62.** *See, e.g., Krackow v. Dr. Jack Kern Profit Sharing Plan*, No. 00 Civ. 2550, 2002 WL 31409362, at *9 (E.D.N.Y. May 29, 2002) (declining to impose fine on defendant for mere technical violation of ERISA that did not prejudice plaintiff). *See also Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1148 (3d Cir. 1993) ("We flatly reject plaintiffs' argument that the $100–per–day penalty of 29 U.S.C. § 1132(c)(1) *must* be imposed for failure to produce documents on request.") (quotation marks omitted, emphasis added).