343 F.3d 133
 Anthony BENNETT, Plaintiff-Appellant,
v.
Glenn S. GOORD; Superintendent Kelly; V. Herbert, Superintendent; R. Becker, DSP; M. Williams, Superintendent Gowanda Correctional Facility; Hiam, Captain, Gowanda Correctional Facility; Maternowski, Sergeant, Gowanda Correctional Facility; C.O. Grange, Gowanda Correctional Facility; C.O. Lavocci, Gowanda Correctional Facility; C.O. Osgood, Correctional Officer, Gowanda; Head Nurse, Gowanda Correctional Facility, Defendants-Appellees.
 Docket No. 01-0184.
 United States Court of Appeals, Second Circuit.
 Argued: June 18, 2003.
 Decided: August 28, 2003.
 
 JOHN W. BERRY (Jonathan M. Jacobson, on the brief), Akin Gump Strauss Hauer & Feld, L.L.P., New York, NY, for Plaintiff-Appellant.
 FRANK BRADY, Assistant Solicitor General (Nancy A. Spiegel, Assistant Solicitor General, on the brief), for Eliot Spitzer, Attorney General of the State of New York, Albany, NY, for Defendants-Appellees.
 Before: WINTER, B.D. PARKER, JR., and RAGGI, Circuit Judges.
 B.D. PARKER, JR., Circuit Judge.
 
 
 1
 Anthony Bennett appeals from a judgment of the United States District Court for the Northern District of New York (Thomas J. McAvoy, Chief Judge). Bennett brought claims under 42 U.S.C. § 1983 alleging that various officials of the New York State Department of Correctional Services (DOCS) had retaliated against him as a consequence of his engaging in constitutionally protected conduct: the successful prosecution of a prior lawsuit and the filing of grievances against various DOCS officials. After minimal discovery, defendants moved for summary judgment. Magistrate Judge Gustave J. Di Bianco, to whom the case had been assigned, recommended that the motion be granted. The district court adopted the magistrate's Report and Recommendation and dismissed Bennett's complaint. He appealed, and we reverse.
 
 BACKGROUND
 
 2
 Before commencing this action, Bennett, an inmate housed in various New York State Correctional institutions, had achieved a measure of success in a previous lawsuit against DOCS officials. In 1995, Bennett, proceeding pro se, brought claims under 42 U.S.C. § 1983 (similar to those asserted here) in the Southern District of New York alleging that DOCS officials had retaliated against him for filing grievances against a corrections officer by issuing false misbehavior reports and punitively transferring him to a different facility. See No. 95 Civ. 8029(SAS) (S.D.N.Y.). Bennett also alleged that he had been denied due process at his hearing on the misbehavior reports. After Bennett's claims survived a motion to dismiss, the district court appointed counsel, and his claims then survived a summary judgment motion. See Bennett v. Tucker, 1996 WL 288202, No. 95 Civ. 8029, 1996 U.S. Dist. LEXIS 7449 (S.D.N.Y. May 30, 1996) (motion to dismiss); Bennett v. Tucker, 1997 WL 193331, No. 95 Civ. 8029, 1997 U.S. Dist. LEXIS 5141 (S.D.N.Y. Apr. 18, 1997) (summary judgment). The New York Attorney General's office decided to settle the litigation. Negotiations with Bennett were finalized in October 1997, and the district court entered a stipulation of settlement on November 3. See No. 95 Civ. 8029(SAS) (Docket, S.D.N.Y.). Defendants paid Bennett $3,000 and promised that he would be considered for a transfer to a different DOCS facility "without benefit or detriment" arising from the litigation. (Oct. 29, 1997 letter from Ainsworth to Judge Scheindlin.)
 
 
 3
 According to Bennett, this lawsuit and particularly its settlement ignited a series of retaliatory actions by DOCS officials, which led to a new lawsuit culminating in this appeal. The materials submitted by the parties in connection with the motion for summary judgment establish the following facts, which, unless otherwise noted, are undisputed. In the Spring of 1997, Bennett had been deemed suitable for a less secure facility and was transferred from Attica Correctional Facility, a maximum-security prison, to Collins Correctional Facility, a medium-security prison. But in late September, while the aforementioned settlement was being finalized, Collins officials attempted to transfer him back to Attica. The first attempt was administratively denied because of "insufficient reason for placement." Just three days later, however, two unrelated disciplinary charges were filed against Bennett by defendant Becker, a Collins correctional officer, and another officer. One charge accused Bennett of defacing library books. The other accused him of "working to consolidate unauthorized groups to a common purpose to the detriment of the safety and security of the facility." At hearings held shortly after the charges were filed, both were sustained. The day after the second hearing Collins officials again sought to transfer Bennett. This attempt was successful, and he was transferred to Attica.
 
 
 4
 Bennett administratively appealed the decisions, and DOCS officials concluded that both lacked merit and reversed them. The decision concerning the charge that Bennett was "working to consolidate unauthorized groups" was found to have been "conclusory [and] without supporting details." The reversal also noted that the "hearing officer should have made further inquiry to develop a record of facts that supported the determination reached." The other decision was reversed because Bennett had not been supplied with documentary evidence that he had requested. Both reversals required prison officials to expunge references to the adverse decisions from Bennett's record.
 
 
 5
 Following these reversals, Bennett sought to be transferred from Attica back to a medium-security prison. He complained to defendant Kelly, Superintendent of Attica, and defendant Goord, Commissioner of DOCS. In response to one complaint, an assistant commissioner wrote on Goord's behalf that Bennett had been "found unsuitable for retention" at Collins. (Dec. 5, 1997 letter from Roy to Bennett.) Another letter, written on behalf of Kelly, informed Bennett that he had been "deemed unsuitable for reduced security," "[b]ased both on recent information and [] past history." (Oct. 29, 1997 mem. from McCray to Bennett.) To make matters worse, according to Bennett, references to the Collins hearing rulings remained on his record and, when he appeared before the parole board while at Attica, the references led, he alleges, to his serving additional years in custody.
 
 
 6
 Proceeding pro se, Bennett filed his initial complaint in June 1998, alleging unlawful retaliation by Collins and Attica prison officials in violation of 42 U.S.C. § 1983.[1] He attached supporting documentation, including copies of the disciplinary charges, their reversals, and the letters denying his transfer requests. Around the time his complaint was filed, Bennett was transferred from Attica to Gowanda Correctional Facility, a medium-security prison, but one which is in the same "hub system" as Attica.[2] He immediately filed a grievance, asserting a right to be transferred out of the Attica hub. In July 1998, the grievance was unanimously accepted by the reviewing committee, which stated:
 
 
 7
 We believe that the Grievant was not afforded the opportunity to be fairly evaluated for an Out-of-Hub Transfer to an area of preference. And we believe that this may be the result of miscommunication and/or misinformation.[3]
 
 
 8
 While awaiting transfer, Bennett underwent medical treatment and HIV counseling at Gowanda. During a discussion with an unnamed defendant "head nurse," Bennett alleges that defendant Rutski, a corrections officer, entered the examination room. Asserting that his right to confidentiality concerning HIV counseling had been violated, Bennett filed another grievance.
 
 
 9
 Three days later, defendant Grange, a corrections officer, charged Bennett with the possession of a home-made weapon, which Bennett alleges officers had planted in his cell. The weapon was allegedly discovered during a search conducted by defendants Grange, Osgood, and Lavocci and authorized by defendant Maternowski. Bennett claims that the search was triggered by his latest grievance over the violation of his privacy in the examination room. DOCS acknowledges that Bennett's grievance triggered the search, but contends that the search was not conducted with a retaliatory motive, but rather in a legitimate effort to uncover a DOCS employees' manual that Bennett had referenced in his grievance, a document which Bennett was not authorized to possess. (See Defs. Br. at 8.) Following a disciplinary hearing, Bennett was found guilty of possession of a weapon. As a result, he was transferred again, this time to the Cayuga Correctional Facility. Once again, however, the decision was reversed on administrative appeal.
 
 
 10
 In September 1998, Bennett filed a verified first amended complaint, adding new allegations of retaliation based on events occurring after his initial complaint and attaching additional corroborating documentation. In November 1999, although no substantial discovery had occurred, DOCS moved for summary judgment, asserting that Bennett's claims were conclusory and meritless and, in any event, that the officials were entitled to qualified immunity. Bennett opposed the motion with a handwritten memorandum, an affidavit, and additional documentation. The Magistrate Judge issued a Report and Recommendation largely agreeing with DOCS that Bennett's claims were both conclusory and meritless.[4] He rejected Bennett's claims that the initial disciplinary charges and the transfer to Attica occurred in retaliation for his earlier lawsuit primarily because "[t]he stipulation of settlement was not even submitted to the court until after [Bennett] was transferred to Attica." (Mar. 22, 2001 Rep. & Rec. at 8.) He found the retaliation claim concerning the weapon inadequate as a matter of law because "[t]he search was not ordered in retaliation for the complaint, it was ordered because the complaint led the officials to believe that [Bennett] might be in possession of unauthorized material[, which] is not constitutionally protected." (Id. at 14.) He recommended that the motion for summary judgment be granted and the complaint dismissed. Bennett filed objections, and the district court reviewed the Report de novo, pursuant to 28 U.S.C. § 636(b)(1)(C), and summarily adopted it in its entirety. (See June 25, 2001 Order.) Bennett appealed, and we appointed counsel to represent him on appeal.
 
 DISCUSSION
 
 11
 We review de novo the district court's grant of summary judgment, resolving all ambiguities and factual inferences in favor of Bennett, the non-movant. See Davis v. New York, 316 F.3d 93, 99-100 (2d Cir. 2002). In addition, because Bennett appeared pro se in the district court, we read his papers liberally, interpreting them "`to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). But because prisoner retaliation claims are "easily fabricated," and accordingly "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration," we are careful to require non-conclusory allegations. Dawes v. Walker, 239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).
 
 
 12
 In order to prevail on his retaliation claims, Bennett bears the burden of showing, first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials. See Gayle v. Gonyea, 313 F.3d 677 (2d Cir.2002) (alleging false disciplinary report); Hendricks v. Coughlin, 114 F.3d 390 (2d Cir.1997) (alleging retaliatory transfers). If Bennett makes these showings, DOCS may evade liability if it demonstrates that it would have disciplined or transferred him "`even in the absence of the protected conduct.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996) (quoting Mount Healthy Sch. Dist. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Since DOCS does not dispute that the prosecution and settlement of a lawsuit and the filing of grievances were constitutionally protected activities, the first element is not at issue. DOCS does, however, contest the existence of a causal connection between the protected activity and the disciplinary actions and transfers.
 
 
 13
 We conclude that Bennett met his initial burden of producing sufficient evidence to raise a question of material fact about whether retaliation was a substantial factor in the transfers and in the discipline he experienced.[5] First, the temporal proximity between the favorable settlement of his lawsuit and the alleged retaliation provides circumstantial evidence of retaliation. See Gayle, 313 F.3d at 683 (noting that "the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation") (citing Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995)). As discussed, just as Bennett was successfully settling his previous lawsuit, and just after a failed attempt to secure his transfer, two disciplinary charges were filed, providing previously absent grounds for transfer. Similarly, the third disciplinary charge, concerning the weapon, was filed just days after Bennett filed his grievance at Gowanda, and, as noted, DOCS acknowledges that the search uncovering the weapon was triggered by the grievance.
 
 
 14
 Bennett's allegations of retaliation are further supported by the fact that essentially all relevant adverse actions by DOCS officials were subsequently found to have been unjustified. See Gayle, 313 F.3d at 683. This is true for: (1) the first transfer attempt; (2) the hearing decisions on both initial disciplinary charges; (3) the transfer to Attica; (4) the transfer from Attica to Gowanda; and (5) the hearing decision on the disciplinary charge for possession of a weapon. And beyond the mere fact that these actions were found unwarranted, we find significant that several were overturned not on procedural or technical grounds but because, on review, they were found to have been devoid of factual support. For example, the decision finding Bennett guilty of working to consolidate unauthorized groups was, as noted above, found to have been entirely conclusory, with the hearing officer reprimanded for failing to develop a record supporting the conclusion he had reached.[6]
 
 
 15
 DOCS argues, and the magistrate accepted, that there could be no link between the settlement of Bennett's previous lawsuit and the charges and transfer, because the settlement was not entered by the district court until after the disciplinary charges were filed. But the record does not support this conclusion. Although it is true that the settlement was not entered by the district court until November 3, the docket in Bennett v. Tucker reveals that settlement discussions were in their final stages in late September. See Docket, No. 95 Civ. 8029(SAS) (S.D.N.Y.). On August 28, the district court ordered a discontinuance of the action in light of settlement discussions and, on September 29, extended the discontinuance because the settlement agreement was being finalized. See id., Docket Nos. 52, 53. September 29 is the same day DOCS officials first sought to transfer Bennett to Attica. Since these facts suggest a link between the settlement and the acts of alleged retaliation, it was error summarily to resolve this issue in DOCS's favor.
 
 
 16
 DOCS also contends that Bennett has failed to produce direct evidence of actual knowledge of the settlement by the Collins defendants when the disciplinary charges were filed and the transfer attempted. But where, as here, circumstantial evidence of a retaliatory motive is sufficiently compelling, direct evidence is not invariably required. See Gayle, 313 F.3d at 683. Moreover, in his verified complaint, treated as an affidavit for summary judgment purposes, see Colon, 58 F.3d at 872, Bennett alleges knowledge by certain defendants, among them Becker and Goord. (See First Am. Compl. at 1A.) He alleges, for example, that Becker stated that Bennett was a "lawyer of the worst sort" and instructed subordinates to find him guilty of the disciplinary charges, so that he could be transferred.[7] DOCS offered only a conclusory denial of these allegations, failing to submit affidavits or any other admissible evidence concerning what Collins officials did or did not know.
 
 
 17
 The allegation of the specific facts underpinning Bennett's retaliation claims is easily sufficient to inform DOCS of the events that are the subject of the complaint and to mount a defense. The complaint alleges, among other things, that Bennett favorably settled a lawsuit and filed grievances about his prison conditions, that hearing officers were instructed to find him guilty of the disciplinary charges at Collins so that he could be transferred, that he was purposefully kept at Attica despite the administrative reversals, that he was then deliberately transferred to another prison in the Attica hub, and that all these actions were adverse to him and motivated by retaliation. Moreover, Bennett also submitted substantial corroborating evidence, including the disciplinary charges and reversals and his transfer records, which flesh out and support these allegations.
 
 
 18
 Once Bennett produced evidence sufficient to raise a material question of fact as to retaliation, the burden shifted to DOCS to demonstrate through admissible evidence that the challenged actions would have occurred in any event. But none was produced. Instead, DOCS essentially treated its own motion for summary judgment as one to dismiss the complaint, contesting only the sufficiency of Bennett's allegations. See Fed.R.Civ.P. 12(b)(6). DOCS's motion was not accompanied by affidavits of knowledgeable correctional officers supplying their version of the relevant events or their explanations for the transfer attempts or disciplinary charges-or, for that matter, by any evidence at all rebutting Bennett's evidence. On this record, DOCS was not entitled to summary judgment. See Flaherty v. Coughlin, 713 F.2d 10, 14 (2d Cir.1983).
 
 CONCLUSION
 
 19
 For the reasons we have discussed, the judgment of the district court is reversed. The case is remanded for further proceedings consistent with this opinion, including the opportunity for further discovery and consideration of the appointment of counsel. See 28 U.S.C. § 1915(e)(1). Although leaving to the district court the resolution of any request for appointment of counsel, we note that Bennett appears plainly to meet the threshold requirement that his claims are likely to be of substance. See, e.g., Hendricks, 114 F.3d at 393-94.
 
 
 
 Notes:
 
 
 [1]
 Although Bennett has only sued officials of DOCS, and not DOCS itself, we will generally refer to these officials collectively as "DOCS."
 
 
 [2]
 Prisons in the same "hub" share administrative, support, and program services. Although Bennett alleges that the filing of his complaint preceded his transfer to Gowanda, the record indicates that the transfer may have preceded the filing of the complaint
 
 
 [3]
 The committee also recommended that Bennett be given an opportunity for an out-of-hub transfer "as soon as possible," but it is unclear whether Bennett was afforded this opportunity
 
 
 [4]
 Neither the magistrate nor the district court examined defendants' qualified immunity defense, and DOCS has not raised this issue on appeal
 
 
 [5]
 Bennett's discovery efforts were largely unsuccessful. On appeal, Bennett (through court-appointed counsel) details these efforts and challenges various discovery rulings of the magistrate. (See Pl. Br. at 16-21.) Because we conclude that summary judgment was inappropriate and that Bennett is entitled to discovery on remand, there is no need to parse his objections.
 
 
 [6]
 We also find significant the fact that, although the hearing decisions were supposed to be expunged from Bennett's record, the present record indicates that they were not, in fact, expunged, with allegedly detrimental consequences
 
 
 [7]
 As Bennett acknowledges, his allegations concerning some defendants are developed with more specificity than those concerning others. (See Pl. Rep. Br. at 19 n.2.) His failure to develop with particularity allegations against some defendants was clearly due, in part, to his inability to obtain discovery unassisted by counsel.