**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 12-1688

NATHAN MARQUIS LEBARON,

Plaintiff, Appellant,

v.

LUIS S. SPENCER, Commissioner, ET AL.,

Defendants, Appellees,

HAROLD W. CLARKE, ET AL.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Nathan Marquis LeBaron on brief pro se.
Nancy Ankers White, Special Assistant Attorney General and
Joan T. Kennedy, on brief for appellees.

July 22, 2013

**Per Curiam**.  Appellant Nathan Marquis LeBaron, an inmate in the custody of the Massachusetts Department of Correction (DOC), filed an action against various prison officials concerning his attempts to practice his religion while incarcerated.  The district court granted summary judgment for the appellees on the ground that the parties had settled the matter.  This is wrong, as the district court eventually realized.  That is, it is clear from the record that no such agreement ever existed, and the appellees, in fact, have never argued that the case had been settled.

Despite the lack of factual findings or legal analysis, we nonetheless conclude that summary judgment can be affirmed on three of the five claims that appellant pursues on appeal:  (1) a 42 U.S.C. § 1983 retaliation claim; (2) a § 1983 equal protection claim; and (3) a due process conspiracy claim under §§ 1983 and 1985.  However, because there are questions of fact regarding appellant's claims under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a) (RLUIPA), and under the First Amendment, the matter must be remanded for further proceedings.

## I.  Background

According to DOC policy, an inmate who wishes religious accommodation must make a written request to the superintendent of the prison in which the inmate is housed, and

-2-

the request is then sent to the Religious Services Review Committee. The Committee, in turn, reviews the request and forwards a recommendation to the Commissioner of the DOC. Appellant, following this policy, filed such a request on January 25, 2010, and he asked therein (1) that he be recognized as a Messianic Jew, (2) that he be provided with a Kosher diet, and (3) that a separate space be dedicated for Messianic Jewish worship and study.

The Committee, on March 18, 2010, recommended granting the first two requests. Shortly thereafter, on March 26, appellee Sherry Elliott, the Director of Classification and Acting Director of Treatment, conducted a sincerity interview with appellant; she concluded that appellant was sincere in his faith, and he began receiving a Kosher diet that evening. As for appellant's request for dedicated space for weekly worship and study, the Committee deferred action and directed him to resubmit his religious request with more information.

Appellant complied, and, on April 30, 2010, he submitted another request to appellee Gary Roden, the Superintendent of MCI Norfolk. In this request, appellant explained that he needed a Messianic synagogue for daily prayer and singing, as well as for the celebration of Jewish and Christian holidays; claimant emphasized that, even if such synagogue were not used for group activities, he would make use

-3-

of it for his own study and prayer.  Appellant also stated that he needed (1) religious books and materials (unspecified), (2) items of religious clothing (unspecified), and (3) a TV, a DVD player, a CD player, and CDs (unspecified).  Roden responded on May 5, 2010, informing appellant that his religious request was being forwarded to Elliott for processing.  The Committee, however, apparently never considered this request, and the reason for this omission remains a mystery due to appellees' silence on the matter.  The instant action ensued.

Eventually, the appellees moved for summary judgment, and, shortly thereafter, their attorney submitted a Notification to the Court.  In this pleading, counsel informed the court that appellant had agreed to submit another religious request, which request would be considered at the Committee's April 2012 meeting.  Although the Notification said nothing about an agreement to dismiss any of appellant's claims, the district court nonetheless granted summary judgment to the appellees on ground that the matter had been settled.

The Committee then considered appellant's requests for religious accommodation and made the following recommendations.  First, the Committee recommended that appellant's request for group study and prayer be denied as there was not yet a Messianic Jewish volunteer to lead such activity, and the DOC does not permit inmates to lead worship

-4-

services; the Committee noted, however, that it was in the process of looking for a volunteer. Next, the Committee reported that personal religious items such as skull caps, prayer shawls, and tzizits could be purchased from the DOC's designated vendor. Last, and as for appellant's request for a personalized Kosher diet, the Committee denied such request essentially because the Kosher diet that appellant already was receiving was not, as he had alleged, nutritionally inadequate.

Meanwhile, appellant filed his own motion for summary judgment, along with several other motions pointing out that the matter had not been settled. When the district court realized its mistake, it did not change its disposition, but, rather, affirmed on the merits on the ground that the appellees' actions had been "reasonable." This appeal ensued.

## II. RLUIPA

RLUIPA, in relevant part, prohibits prisons that receive federal funds from imposing a "substantial burden" on an inmate's "religious exercise" unless prison officials can demonstrate that the imposition of such a burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA defines the term "religious exercise" very broadly, and the term includes "any exercise of religion, whether or not

compelled by, or central to, a system of religious belief." §
200cc-5(7)(A). Thus, "[a]lthough RLUIPA bars inquiry into
whether a particular belief or practice is 'central' to a
prisoner's religion, the Act does not preclude inquiry into the
sincerity of a prisoner's professed religiosity." Cutter v.
Wilkinson, 544 U.S. 709, 725 n. 13 (2005). As a result, a
RLUIPA plaintiff bears the burden of demonstrating that he or
she wishes to engage in "(1) a religious exercise (2) motivated
by a sincerely held belief, which exercise (3) is subject to a
substantial burden imposed by the government." Abdulhaseeb v.
Calbone, 600 F.3d 1301, 1312 (10th Cir. 2010). See also Koger
v. Bryan, 523 F.3d 789, 797-98 (7th Cir. 2008) (same).

We view appellant as complaining about essentially
four categories of "religious exercises": (1) appellees failed
to provide a Messianic synagogue; (2) appellees refused to
permit appellant to engage in group worship; (3) appellees
failed to timely provide appellant with a Kosher diet and the
diet that he is now receiving is nutritionally inadequate; and
(4) appellees deprived appellant of various religious
materials, including clothing, books, a TV, a DVD player, a CD
player, and CDs. Appellees have not addressed the question
whether the foregoing qualify as "religious exercises" nor have
they argued that appellant is not sincere in believing that he

-6-

needs to engage in such exercises in order to practice his religion.

Rather, the only argument that the appellees have made is that appellant has not shown a substantial burden to the practice of his Messianic Judaism. Although we have not yet defined the term "substantial burden," we accepted, in Spratt v. Rhode Island Dept. of Corrections, 482 F.3d 33 (1st Cir. 2007), the definition used by the district court in that case – i.e., such a burden is one that puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 38 (internal quotation marks and citation omitted). Since the parties do not suggest otherwise, we will use this definition in the following discussion.

A. Messianic Synagogue

"Courts have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that . . . exercise." Cryer v. Massachusetts Dept. of Correction, 763 F. Supp. 2d 237, 247 (D. Mass. 2011) (finding a question of fact regarding whether a complete ban on the use of ceremonial tobacco in Native American ceremonies placed a substantial burden on the inmate's religious exercise; internal quotation marks and citation omitted). See also Spratt, 482 F.3d at 38 (finding that a prison policy forbidding an inmate from ever preaching to other

inmates placed a substantial burden on that inmate's religious exercise); Crawford v. Clarke, 578 F.3d 39, 44 (1st Cir. 2009) (stating that the plaintiffs had shown a substantial burden to their religious exercise because they were prohibited from participating in any weekly, group religious services). Since appellant is completely barred from praying in a Messianic Synagogue, an exercise that he sincerely believes is necessary for the practice of his religion, it is arguable that he has been forced "to modify his behavior and to violate his beliefs." Spratt, supra, 482 F.3d at 38. Given this, and given that appellees have not addressed the issue, we find that material questions of fact exist concerning whether appellant's religious exercise has been substantially burdened.

B. Group Prayer

As with access to a Messianic Synagogue, appellant has been completely barred from engaging in group prayer, a burden we found substantial in Crawford, 578 F.3d at 44. Appellees, in support of summary judgment on this issue, have cited one case from this circuit, Bader v. Wrenn, 675 F.3d 95 (1st Cir. 2012), and two cases from the Fifth Circuit, Baranowski v. Hart, 486 F.3d 112 (5th Cir. 2007), and Adkins v. Kaspar, 393 F.3d 559 (5th Cir. 2004). However, appellees do not discuss the cases or provide any explanation for why they believe that the instant situation is governed by these cases.

-8-

Thus, the argument has been waived.  See Medina-Rivera v. MVM, Inc., 713 F.3d 132, 140-41 (1st Cir. 2013) ("developing a sustained argument out of . . . legal precedents" is a party's job, and when the party presents only "undeveloped arguments," they will be deemed waived; internal quotation marks and citation omitted).

We nonetheless conclude that while these cases concern regulations, as here, requiring that group services be led by qualified persons, they are distinguishable.  That is, the prison officials in those cases had submitted evidence describing in detail how the volunteer policies had been applied to each plaintiff, and this evidence showed that prison officials had, in fact, made efforts to locate persons to lead group services.  Here, in contrast, there is no such evidence, and we therefore cannot say, as a matter of law, that appellant's religious exercise has not been substantially burdened by the lack of any opportunities to engage in group prayer.  See id. at 136 ("we will affirm the grant of summary judgment if (but only if) the record evidence . . . reveals that there is no genuine dispute as to any material fact and that [the moving party] is entitled to judgment as a matter of law"; internal punctuation, quotation marks, and citation omitted).

C.  Kosher Diet

Although appellees do not raise any arguments on appeal regarding the provision of a Kosher diet, they argued below that since appellant had received such a diet on March 26, 2010, the same day as his sincerity interview with Elliott, he cannot show that his religious exercise has been substantially burdened.  This is correct as far as it goes. However, appellant went without Kosher food for roughly two months -- the period of time between January 25, 2010, when he first requested a Kosher diet, and March 26, when he began receiving the diet.  Since the ban was total, there is a question of fact regarding whether appellant's religious exercise had been substantially burdened during this time, and summary judgment on this claim cannot stand.  See Ramsey v. Goord, 661 F. Supp. 2d 370, 396-97 (W.D.N.Y. 2009) (rejecting the defendants' argument that going 30 days without Kosher food constituted "no more than a de minimus interference" with the inmate's religious practice and noting that missing even one religious meal can be a substantial burden if the inmate sincerely believes that participation in the meal is necessary for the practice of his religion; internal quotation marks omitted).

As for the adequacy of the Kosher diet, it has been held that "a prisoner's religious dietary practice [will be

found to be] substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition." Nelson v. Miller, 570 F.3d 868, 879 (7th Cir. 2009). Appellant, in this regard, has alleged that (1) the Kosher meal portions are too small and do not meet the Recommended Daily Allowance (RDA) set out by the Food and Nutrition Board of the National Academy of Sciences, (2) the meals contain rotten fruit and items that are not Kosher, (3) the diet is too high in sodium, and (4) there is not enough meat. The appellees, in response to these allegations, have submitted the affidavit of William Bates, the Director of Food Services at MCI Norfolk.

Bates explains, in relevant part, (1) that all of Norfolk's inmate menus are analyzed by an independent, registered dietician who certifies that the menus meet the RDA, (2) that the Kosher menu provides an average of 2,450 calories per day, (3) that there is a sufficient amount of protein in the diet, and (4) that the sodium level of the meals is within the RDA for adult men. In light of the foregoing, we think that appellant, in order to create a question of fact, was required to have provided more detail regarding the allegedly small meal portions and high sodium levels. In other words, his allegations are too conclusory to create a question of fact regarding these issues. This leaves appellant's allegations

concerning the lack of meat and the provision of rotten fruit and food that is not Kosher, and these allegations also are conclusory.  That is, appellant does not provide any further information such as why the menu needs more meat or what kind of rotten fruit and non-Kosher food he has received.  In the absence of this kind of detail, we conclude that appellant has not established questions of fact regarding the adequacy of the Kosher diet.  Summary judgment in favor of appellees on this issue therefore was appropriate.

D.  Various Religious Materials

Beginning with appellant's request for a TV, a DVD player, a CD player, and CDs, he does not claim that these items have any religious significance in and of themselves. Thus, and even though appellees do not argue the issue, we do not think that the possession of such items can be considered to be a "religious exercise."  Further, and even assuming that appellant intends to use such items for the study of his religion, he does not explain how not having them has forced him to violate any of his religious beliefs.  See Spratt, 482 F.3d at 38.  Thus, we do not think that appellant has raised a question of fact regarding the substantial burdening of his religious exercise.  See Van Whye v. Reisch, 581 F.3d 639, 657 (8th Cir. 2009) (stating that "RLUIPA does not require the prison to permit an inmate to possess every tangential item of

-12-

property that could aid the inmate's religious exercise or learning" and that "[d]epriving [the plaintiff] of a tape player in his cell does not significantly inhibit his religious expression [or] meaningfully curtail his ability to adhere to his faith").

Turning to appellant's request for books and other religious materials, he does not specify what books he needs or explain what the other religious "materials" consist of. The same is true of appellant's request for items of religious clothing. He does not explain exactly what items he needs to wear nor does he address the fact that personal religious items such as skull caps, prayer shawls, and tzizits are already available. Given this, we do not think that appellant has submitted enough evidence to create a question of fact regarding how the absence of the foregoing religious materials forces him to modify or to violate his religious beliefs. See Cryer v. Clarke, No. 09-10238, 2012 WL 6800791, at *9 (D. Mass. September 7, 2012) (where the prison had not completely banned the possession of Native American artifacts, and the inmate failed to explain how using the presently available artifacts forced him to modify his religious beliefs, summary judgment for the defendants was proper). Summary judgment on this claim in favor of the appellees therefore was appropriate.

III.  The First Amendment

As we have explained, "[a] prison regulation which restricts an inmate's First Amendment [free exercise] rights is permissible if it is reasonably related to legitimate penological interests." Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir. 2011) (internal quotation marks and citation omitted). Four factors are relevant in making this determination:  "(1) whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; (2) whether alternative means to exercise the right exist; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the prison regulation." Id. at 74.  The appellees' argument regarding these factors is limited to the completely conclusory assertion that, since appellant has been allowed to practice his religion, his First Amendment claim must fail.

The fact that appellant has some means of exercising his religion is, of course, one of the relevant factors. However, appellees do not address the particular religious exercises in which appellant wishes to engage nor do they specify, much less discuss, the legitimate government interests justifying the impingement on each of these exercises.  Given this, as well as appellees' failure to have addressed the other

relevant factors, summary judgment in their favor on appellant's First Amendment claim must be reversed.

## IV. Retaliation

It is well-settled that "retaliation against a prisoner's exercise of constitutional rights is actionable" under § 1983. Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). However, because "running a prison system is a difficult enterprise" and because prisoner claims of retaliation are "easily fabricated and pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration," such claims must be based on facts, not on "gossamer strands of speculation and surmise." Id. (internal punctuation, quotation marks, and citation omitted). Importantly, a plaintiff must allege facts that show that he or she engaged in a protected activity and, because of this activity, adverse action resulted. Id. at 48.

In this regard, appellant claims that, in retaliation for his efforts to practice his religion, the appellees engaged in the following actions: (1) bringing false disciplinary charges; (2) moving him to different blocks at Norfolk as sanctions for these disciplinary infractions; (3) not providing an adequate Kosher diet; (4) poisoning him; and (5) transferring him to a maximum security prison. While we assume that appellant's practice of his religion is a protected

activity and that the appellees' actions were adverse, appellant's allegations regarding a causal connection between his assertion of his free exercise rights and the adverse actions taken against him are essentially conclusory. Hannon, 645 F.3d at 48 ("[c]onclusory allegations and rank speculation, even if couched in pejorative language, will not suffice to defeat . . . summary judgment" on the issue of a causal connection). Indeed, the only specific evidence of a retaliatory motive that appellant offers is the allegation that an unnamed transportation officer had mentioned to appellant that an unidentified person had told the officer that appellant was trying to start his own religious cult. This kind of hearsay, however, is insufficient to create a question of fact for purposes of defeating summary judgment. Id. at 49 ("[i]t is black-letter law that hearsay evidence cannot be considered on summary judgment for the truth of the matter asserted"; internal quotation marks and citation omitted). Thus, we affirm the grant of such judgment to the appellees on appellant's retaliation claim.

## V. Equal Protection

Appellant must establish, in order to set out an equal protection claim, that compared with other similarly situated inmates, he "was treated differently because of an improper consideration, such as his religion." Kuperman, 645

F.3d at 77-78. Appellant claims, in this regard, that Muslims and Jews have dedicated spaces for worship and access to such in order to pray, while Messianic Jews do not have such space. However, this is all that appellant says, and, as we explained, "[o]n issues for which [appellant] would bear the burden of proof at trial, he ha[s] to introduce definite, competent evidence to survive summary judgment." Id. at 74. Thus, even though appellant plainly is implying that he was denied the same accommodation because of his Messianic Judaism, this is not enough. Summary judgment on appellant's equal protection claim in favor of appellees therefore is affirmed.

## VI. Conspiracy

Appellant's claim in this regard is that the appellees conspired to prevent him from practicing his religion and that, as part of this conspiracy, Roden and Elliott made sure that the Religious Review Committee never considered his religious requests. "Section 1985(3) prohibits two or more persons in any State or Territory from conspiring to deprive any person or class of persons of the equal protection of the laws." Perez-Sanchez v. Public Building Auth., 531 F.3d 104, 107 (1st Cir. 2008) (internal punctuation, quotation marks, and citation omitted). As we have explained, a claim under § 1985(3) has four elements: "First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose

-17-

to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right." Id. at 107. As for the second requirement, we will assume, without deciding, that discrimination based on religion constitutes a deprivation of the equal protection of the laws. Id. at 109 (citing Brown v. Reardon, 770 F.2d 896, 906 (10th Cir. 1985), which so holds). However, appellant has submitted insufficient evidence of a conspiracy.

"A civil rights conspiracy as commonly defined is a combination of two or more persons acting in concert to commit an unlawful act . . . the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another." Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) (internal quotation marks and citation omitted). While "conspiracy is a matter of inference, summary judgment may still be appropriate on a conspiracy claim where the nonmoving party rests merely on conclusory allegations." Id. Here, the only evidence that appellant points to in support of the existence of a conspiracy is the fact that the Religious Review Committed failed to act on his April 30, 2010 religious request.

We do not think that this is sufficient evidence, standing alone, from which a reasonable jury could infer the existence of an agreement among the appellees to prevent appellant from practicing his Messianic Judaism. Indeed, the record shows that the Religious Services Review Committee had, in fact, acted on two of appellant's previous religious requests, and, in relation to the January 25, 2010 request, granted appellant a Kosher diet. Further, the Committee, in considering appellant's most recent request, listed the efforts that would be made to accommodate appellant -- looking for library books on Messianic Judaism and for a volunteer to conduct group services. Given this, summary judgment in favor of the appellees can be affirmed.

## VII. Conclusion

In sum, then, we vacate the grant of summary judgment on (1) appellant's RLUIPA claims concerning the denial of a synagogue, group prayer, and a Kosher diet between January 25 and March 26, 2010 and (2) on his claim under the First Amendment, and we remand for further proceedings. The summary judgment is affirmed on the remainder of appellant's claims. We only note, in closing, that we have not addressed the issues of immunity and what kind of relief is available to appellant, should he prevail on any of the remaining claims. All pending motions are denied as moot.