HARDIMAN, Circuit Judge,
dissenting.
The Court’s opinion and the concurrence shed light on a lacuna in our precedent on First Amendment retaliation claims in the prison context, namely whether and how a prisoner can overcome the “same decision” defense when the adverse action complained of is a charge of prison misconduct and the prisoner concedes the facts giving rise to the charge. Unlike my colleagues, however, I do not see this appeal as the appropriate vehicle for answering that question. Under the current state of the law, courts are required to uphold government action motivated by retaliatory animus as long as the responsible government officials can show that the same action would have occurred for reasons unrelated to retaliation — a mixed-motive defense. Here, the evidence the parties have proffered on summary judgment establishes at most that a prison guard acted with mixed motive, which is not enough. Because I believe Watson’s appeal flounders on that evidentiary ground, I respectfully dissent.
I
In Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001), we “imported” the burden-shifting scheme enunciated by the Supreme Court in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 288, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), to adjudicate First Amendment retaliation claims brought by prisoners. Under Mt. Healthy, the causal relationship between protected conduct and adverse action requires a showing of but-for .causation. Instead of placing the heavy burden of proving but-for causation solely on the prisoner, however, we “divided the burden of proof relating to causation between the parties.” Greene v. Doruff, 660 F.3d 975, 980 (7th Cir. 2011). Thus, once a prisoner shows that a retaliatory motive was a “substantial or motivating factor” leading to the adverse action, the burden shifts to prison officials to show that “they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.” See Rauser, 241 F.3d at 334. Accordingly, Rauser[1] s same-decision de *432 fense essentially requires prison officials to disprove that the retaliatory motive was a but-for cause of the adverse action.[1]
The upshot of Mt. Healthy and Rause'ds, emphasis on but-for causation is that a prisoner cannot negate a same-decision defense merely by pointing to the existence of retaliatory motive on the part of prison officials, i.e., that the prison officials acted with mixed motives. Instead, the prisoner must counter a same-decision defense directly, that is, with evidence demonstrating that retaliation was a but-for cause. To hold otherwise would permit the prisoner to override the same-decision defense using exactly the same evidence relevant' to establishing his prima facie case. This, in turn, would vitiate the inference of but-for causation that arises when prison officials fail to prove the same-decision defense, see Greene, 660 F.3d at 979, and would undermine the purpose of allowing a mixed-motive defense in the first place: achieving an appropriate balance between protecting the prisoner’s constitutional rights, and avoiding the “undesirable consequences not necessary to the assurance of those rights.” 429 U.S. at 287, 97 S.Ct. 568.
II
The Majority references but-for causation only in passing, and instead focuses its attention on the open question of what (if any) evidence a prisoner can offer to overcome the same-decision defense. It confronts this open question in a scenario that has received significant judicial attention but upon which we have opined only in limited fashion. Specifically, Watson has conceded the factual predicates giving rise to his misconduct — that his radio’s antenna was “loose” and “wiggly” and that he had secured the antenna to the radio with tape, see Watson Br. 16 — but nonetheless contends that he was issued a misconduct in retaliation for requesting a grievance form. Several of our sister courts would foreclose his claim merely by virtue of the fact that his misconduct is supported by “some evidence,” Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994), or because “there is no dispute that [Watson] committed the most serious, if not all, of the prohibited conducted charged.” Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (internal quotation marks omitted). See also O’Bryant v. Finch, 637 F.3d 1207, 1215 (11th Cir. 2011) (“[A]n inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process.”). Our only precedential foray into this area acknowledges that a “clear and overt” violation of prison regulations could potentially preclude a genuine dispute of material fact on the same-decision defense. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).
These decisions suggest that a certain “quantum” of misconduct evidence, id. will “checkmate[ ]” a prisoner’s retaliation claim, Henderson, 29 F.3d at 469, a proposition that the Court today neither accepts nor rejects. Instead, the Majority asserts that the record in this case supports opposing inferences that establish a genuine dispute of material fact on Officer Coutts’s same-decision defense. Thus, the Majority contrasts this appeal with Carter v. McGrady by stating:
*433 Watson’s situation is different. Watson’s broken radio was not so “clear and overt” a violation that we can conclude that-he would have been written up if he had not also given prison officials “a hard time.” The radio had allegedly been in the same condition for more than a year. Moreover, there is evidence that other inmates had radios with loose or broken antennas, but those items were not confiscated and- the inmates did not receive a misconduct. Finally, [Officer] Kline did not charge Watson with a misconduct when he confiscated the radio. Accordingly, a reasonable fact finder could conclude that the misconduct was issued in retaliation for Watson’s statement that he was going to file a grievance, and not in furtherance of legitimate penological goals.
Majority Op. 426.
Based on my examination of the summary judgment record, I do not agree that “Watson’s situation is different.” At best, his evidence reiterates that retaliation was among Coutts’s motivations for issuing the misconduct, but does not demonstrate that Watson would not have received the misconduct in the absence of that retaliatory motive. In other words, Watson’s evidence fails to establish a genuine dispute concerning the element of but-for causation (or lack thereof) that lies at the center of the same-decision defense. Accordingly, this appeal does not present an occasion for us to consider whether and how the same-decision defense can be overcome.
The Majority places substantial weight on statements made by Coutts to the effect that he issued the misconduct because Watson gave the guards a “hard time.” This evidence comes by way of Watson’s deposition testimony, and I excerpt the relevant portions of the record in the margin.[2] The important point here is that Watson’s testimony establishes at most that Coutts acted with retaliatory motive, but it hardly demonstrates that his motive was a but-for cause of the misconduct. By permitting such an inference from Coutts’s admission, the Majority undoes the careful balance underlying the same-decision defense by allowing Watson to survive summary judgment simply by asserting that Coutts acted with mixed motive. Moreover, by acknowledging that other prison offi *434 cials in Coutts’s chain of command “would have approved the misconduct” irrespective of his request for a grievance, Majority Op. 423, the Majority’s inference of but-for causation with respect to Coutts cannot be squared with its conclusions regarding causation as to the other defendants because all of them had a hand in bringing about the challenged conduct — the issuance of the misconduct.
The Majority’s consideration of the remaining evidence is equally unpersuasive. First, the Majority asserts that Watson’s broken radio was not a “clear and overt” violation of prison regulations in contradistinction to Carter. However, under these regulations, “any item altered from its original state (state issued or personal) may be considered contraband,” App. 4 (quoting DC-ADM-815 § 3.C.1), and there is no factual dispute that Watson altered his radio’s antenna by securing it to the radio with tape. As such, the radio was contraband, and Watson’s possession of it was unquestionably a violation. To the extent that the Majority disagrees, it is worth noting that Watson has not challenged the regulation’s validity, and its application to his radio is neither irrational nor fails to serve a legitimate penological interest. See Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Indeed, it is .not difficult to see why a detached antenna poses a security threat in a prison.
Second, the Majority emphasizes the temporal aspects surrounding the issuance of Watson’s misconduct, specifically that Officer Kline failed to issue a misconduct when he confiscated Watson’s radio, and the radio had been contraband for over a year without action from prison officials. It is not clear how these considerations should cut with respect to Coutts, as opposed to Kline or the other officers. There is no suggestion that Coutts failed to act immediately when he learned of Watson’s radio, or that he (or any other officer for that matter) was simply hunting for an infraction of prison rules. Thus, I do not agree that the timing of the misconduct issued against Watson supports an inference of but-for causation against Coutts.
Finally, the Majority suggests that Watson has shown discriminatory application of the contraband regulation based on evidence that similarly situated prisoners with broken radios were not issued misconducts because they did not make requests to file grievances. I agree that the disparate treatment of similarly situated individuals can support an inference of but-for causation, but Watson’s evidence falls far short of the mark. The evidence in question comprises declarations filed by three of Watson’s fellow prisoners: Frank Trainer, Harry Montgomery, and Ronald Banks. The affidavits filed by Trainer and Montgomery are not probative in this case because they fail to identify any of the officers responsible for the averred conduct; Banks’s declaration names Captains Simosko and Dupont, but says nothing about Coutts, so it too is of limited value. Banks’s declaration actually cuts against Watson because it'mentions an instance in which Simosko and Dupont upheld a misconduct charge involving an “altered” radio in the absence of a grievance request, ie. a paradigmatic nonretaliatory application of the contraband regulation. See App. 127. Thus, I cannot agree with the Majority that Watson’s evidence suffices to create a genuine dispute as to whether he would have received his misconduct in the absence of his request to file a grievance.
* Í: * * * *
For the foregoing reasons, I respectfully dissent.

. Some of our sister courts impose a higher burden on prisoners. See Rauser, 241 F.3d at 334 n.2 (citing Goff v. Burton, 7 F.3d 734, 737-38 (8th Cir. 1993); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979)); see also Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (requiring the prisoner to prove that the adverse action “did not reasonably advance a legitimate correctional goal”).

. A. Officer Coutts ... was interrogating me about the radio, saying that I gave his Captains and the other Officer a hard time by wanting my radio antenna fixed, instead of just leaving it alone. Now I’m going to get a Misconduct and Mr. DuPont is going to keep my radio. App. 62.
Q. They’re going to keep your radio? That's what [Coutts] said?
A. Right ... So we go back and forth. So I was telling [Coutts] that the [sic] Officer Kline broke it. So I was just asking him, could he fill out an incident report, so I could have my radio antenna fixed. And then he was saying ... that I didn’t do it in a polite way and I wanted an incident report filled out. But then I asked for a Grievance, you know. And I said, yeah, well, that’s the policy, you know. I need an incident report filled out so that the Officer that broke the antenna, so I can have my radio fixed. But I still have to make a Complaint.
Anyway, he said, well, go back to the Unit and they going to call you back down here to pick up your Misconduct.
App. 62-63.
Q. But you had thought that [Coutts] was calling you down to pick up your radio; right?
A. Right. But, the point is, when I got down here, he was interrogating me and he had told me, being that I gave his Captain and the other Officer a hard time, I’m going to be written-up.
App. 65.
A. Right. [Coutts] stated, you gave my Captain and the other Officers a hard time, wanting a Grievance and an Incident Report filled out. For that, you're getting a Misconduct.
App. 90.